IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION


| | | |
|---|---|---|
| PARENTAL GUIDE OF TEXAS, INC. | § | |
| Vs. | § | CIVIL ACTION NO. 2:03-CV-22 |
| THOMSON, INC. | § | |


**MEMORANDUM OPINION AND ORDER**

**1.      Introduction.**

At issue in this case is the construction of a contingency payment provision in a settlement agreement.  The court is persuaded that the defendant's construction of the agreement is correct.  As such, the court grants the defendant's motion for summary judgment (#63).

**2.      Factual Background and Procedural Posture.**

On December 18, 2000, Parental Guide of Texas, Inc. ("PGT"), sued various television manufacturers, asserting that the defendants' televisions infringed certain claims of United States Patent No. 4,605,964 (the "'964 patent") because of their inclusion of V-Chip technology.  The V-Chip permits a user to block objectionable television programming from being viewed by, for example, children in a household.

One of the defendants in the patent case was Thomson, Inc. ("Thomson").   Thomson manufactures televisions which incorporate the V-Chip technology.  In October, 2002, Thomson and PGT entered into negotiations to resolve the claims pending in the patent case. The overall structure

1

of the proposed agreement included a release and license agreement granted by PGT to Thomson in exchange for a lump-sum payment by Thomson and an additional contingency payment conditioned on a termination of the patent case in PGT's favor.

The pertinent provisions are contained in Paragraph 3 of the agreement.  Paragraph 3 obligates Thomson to pay to Parental Guide:

(a)     a nonrefundable damages payment of Four Million dollars ($4,000,000) within seven (7) business days after the Effective date; and

(b)     a contingent payment in accordance with the following:

(i)     if and only if there is a Favorable Termination of the Lawsuit, an amount equal to (i) 60% of the Litigation Royalty multiplied by 16,000,000 units, less (ii) the payment made pursuant to paragraph 3(a); or

(ii)    if and only if all defendants in the Lawsuit settle with Parental Guide before any Favorable Termination of the Lawsuit, Thomson will pay no further royalty.

"Favorable Termination" and "Litigation Royalty" are defined terms:

Favorable Termination means either  (a) a final, irrevocable and nonappealable judgment and/or order in the Lawsuit, which holds (specifically or to the effect) that claims of the '964 Patent are valid, enforceable and infringed by accused television sets that were manufactured and sold by an active defendant in the Lawsuit, or (b) settlement agreements are reached with all remaining defendants in the case before the expiration of thirty (30) days after the United States District Court for the Eastern District of Texas renders its final judgement, provided however that at least one defendant must have remained in the lawsuit as of the date of such judgment.

Litigation Royalty means the lowest per unit reasonable royalty, if any, as expressly determined in the Lawsuit in accordance with the law applicable to 35 U.S.C. § 284, by the final, irrevocable, and nonappealable order in the Lawsuit.

As the date set for jury selection in the patent case approached, PGT entered settlement agreements with all of the defendants to the patent case except the Mitsubishi defendants (collectively "Mitsubishi").   The timing and sequence of the agreements adversely affected

2

Mitsubishi's ability to defend itself.  Many of the other defendants settled on the eve of the trial,

leaving Mitsubishi with the sole responsibility for defending the case.

Eventually, PGT and Mitsubishi resolved their dispute through a Rule 68 offer of judgment.

Rule 68 provides:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.  If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Pursuant to Rule 68, on October 30, 2002, Mitsubishi made an offer of judgment to PGT.

The offer of judgment stated that the patent was valid and enforceable and that Mitsubishi's accused

televisions infringed the patent.  The offer also stated that a royalty under 35 U.S.C. § 284 of $1.15

per television would apply to all accused televisions sold after the filing of the patent case and that

the total televisions projected to be sold through the expiration of the patent was 955,000.  The offer

clarified that the total judgment award "shall be $1,098,250."  Finally, the offer expressly reserved

to Mitsubishi the right to appeal the court's claim construction rulings and the court's denial of the

defendants' motions for summary judgment.

On October 31, 2002, PGT accepted the offer and requested that the court enter judgment in

accordance with the offer.  The court signed a judgment which mirrored the terms of Mitsubishi's

Rule 68 offer.  Consistent with the terms of the offer, Mitsubishi later noticed an appeal from the

judgment but dismissed it after PGT and Mitsubishi entered an agreement for the satisfaction of the

judgment.

In January, 2003, PGT made a demand on Thomson to pay certain amounts to PGT under the contingency payment provisions of the settlement agreement.  Thomson refused PGT's demand, and this lawsuit followed.

The parties filed cross-motions for summary judgment based on the terms of the settlement agreement.  In its motion for summary judgment, Thomson asserts that a determination of a Litigation Royalty is a prerequisite to its obligation to pay any money under the contingency payment provision because otherwise there is no way to determine how much is owed.  Thomson contends that the plain language of the agreement requires a Litigation Royalty to be "expressly determined" in accordance with the patent statute governing the calculation of a reasonable royalty.  Because the offer of judgment procedure used to resolve the claims between PGT and Mitsubishi did not require an express determination of a reasonable royalty, Thomson asserts that it owes no contingency payment.  Thomson also asserts that the Rule 68 procedure used by PGT and Mitsubishi amounts to a settlement, no matter what label the parties attached to it.  Thus, Thomson argues that PGT settled with all of the remaining defendants before any Favorable Termination occurred, and, therefore, Thomson owes no further payment.

In response to Thomson's motion, and in its own cross-motion for summary judgment, PGT argues that it has satisfied the conditions precedent to recovery of the contingency payment.  PGT asserts that the court's judgment entered on the Rule 68 offer and acceptance is a Favorable Termination of the lawsuit.  PGT notes that the judgment explicitly reserved to Mitsubishi a right of appeal and that Mitsubishi in fact exercised that right (at least up to a point).  In addition, PGT contends that the royalty stated in the judgment is sufficient to satisfy the agreement's requirement

of a Litigation Royalty.  Having satisfied the two prerequisites, PGT contends it is entitled to judgment as a matter of law in the case in an amount based on the Litigation Royalty expressed in the judgment signed by the court.

### 3.    Summary Judgment Standard.

A summary judgment motion is properly granted when, viewing the evidence in the light most favorable to the non-movant, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The party seeking summary judgment need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue.  Instead, he may rely on the absence of evidence to support essential elements of opposing party's claims.  *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir.1987).  In response to a properly supported motion for summary judgment, the non-movant must go beyond the pleadings and identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994).  Although the court resolves factual disputes in favor of the non-movant, *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994), summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322-23.

### 4.    Discussion.

In construing a written contract, the primary concern of the court is to ascertain the true

5

intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962); *Citizens Nat'l Bank in Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941). If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 157; *R & P Enterprises*, 596 S.W.2d at 519. Likewise, the question whether a contract is ambiguous is a question of law. *Instone Travel Tech Marine & Offshore v. International Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir.2003). A contract is not ambiguous simply because the parties offer competing constructions of it. Rather, a contract is only ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 821-22 (5th Cir. 2003); *Heritage Resources, Inc. v. Nationsbank*, 939 S.W.2d 118, 121 (Tex.1996).

Thomson maintains that PGT cannot recover on its breach of contract claim because it has not established a Litigation Royalty as the term is used in the settlement agreement. According to Thomson, in the absence of a Litigation Royalty, there is no way to determine the amount of the contingency payment Thomson must pay under the agreement. Thomson urges that the term

"Litigation Royalty" contemplates a royalty based on the *Georgia-Pacific* factors as found by a judge or a jury, but it does not include a stipulated royalty or a rate agreed to by the parties through the use of the Rule 68 offer of judgment procedure.

Under the agreement, Litigation Royalty means "the *lowest* per unit reasonable royalty, if any, *as expressly determined in the Lawsuit in accordance with the law applicable to 35 U.S.C. § 284*, by the final, irrevocable, and nonappealable order in the Lawsuit." (emphasis added). By its terms, the contract requires the court to construe the term "Litigation Royalty" with reference to the law applicable to 35 U.S.C. § 284.

35 U.S.C. § 284 provides in relevant part:

> Upon finding for the claimant the *court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer*, together with interest and costs as fixed by the court
>
> When the damages are not *found by a jury, the court shall assess them* . . . .
>
> The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

(emphasis added). As the statute states, a court is required to award a successful patentee the actual damages caused by the infringement but in no event shall the award be less than a reasonable royalty.

The reference in the settlement agreement to a royalty *expressly determined in accordance with the law applicable to 35 U.S.C. § 284* is a specific and unambiguous reference to a well-known methodology in patent litigation for assessing a reasonable royalty to compensate the patentee for infringement–the *Georgia Pacific* factors. *See Georgia Pacific v. United States Plywood Corp.*, 318

7

F. Supp. 1116 (S.D.N.Y. 1970).[1]  By requiring "an express determination" in accordance with the

law applicable to 35 U.S.C. § 284, the agreement contemplates a royalty rate that is the product of

an evaluation of the *Georgia Pacific* factors.  By its express reference to the statute, the agreement

also contemplates that the court shall "assess" or determine those damages in the absence of a jury

finding.

_____

[1]        The *Georgia Pacific* methodology requires a fact-finder to consider the following factors:  (1) the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty; (2) the rates paid by the licensee for the use of other patents comparable to the patent in suit; (3) the nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold; (4) the licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly; (5) the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales; (7) the duration of the patent and the term of the license; (8) the established profitability of the product made under the patent; its commercial success; and its current popularity; (9) the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results; (10) the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention; (11) the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use; (12) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer; (14) the opinion testimony of qualified expert; (15) the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee–who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention–would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No jury made an express determination of a reasonable royalty in accordance with the law applicable to § 284. Indeed, none was ever empaneled. Nevertheless, PGT contends that this court's judgment, entered after the acceptance of a Rule 68 offer, is sufficient to establish the existence of a Litigation Royalty. The court disagrees.

The primary flaw with this argument is that *Mitsubishi and PGT* determined the rate to be included in the judgment, not the court. The court undertook no evaluation of the *Georgia Pacific* factors. In fact, under the circumstances presented in this case, the court had no discretion to determine any of the terms of the judgment agreed to by the parties. *Ramming v. Natural Gas Pipeline Co. of America*, 390 F.3d 366, 370-71 (5th Cir. 2004). The entry of judgment on a Rule 68 offer is generally a ministerial act and can be performed by the clerk without any input from the court or a jury. As the Seventh Circuit has noted:

> Rule 68 operates automatically, requiring that the *clerk* "shall enter judgment" upon the filing of an offer, notice of acceptance and proof of service. This language removes discretion from the clerk or the trial court as to whether to enter judgment upon the filing of the accepted offer. Because of this mandatory directive, the district court has no discretion to alter or modify the parties' agreement. Entry of a Rule 68 judgment is ministerial rather than discretionary. Thus, there is no opportunity for a district court to even consider allowing rescission of the Rule 68 "contract." Once the acceptance has been properly filed, judgment must be entered.

*Webb v. James*, 147 F.3d 617, 621 (7th Cir. 1998)(emphasis added)(internal citations and quotations omitted); *Mallory v. Eyrich*, 922 F.2d 1273, 1278-79 (6th Cir. 1991)("In addition to the mandatory nature of the rule in the award of costs to the offeror, Rule 68 also leaves no discretion in the district court to do anything but enter judgment once an offer has been accepted."); *Oates v. Oates*, 866 F.2d 203, 208 (6th Cir. 1989)("Because the court clerk failed to perform the ministerial act of entering judgment, the court should have entered judgment *nunc pro tunc*."); *Bowles v. J.J. Schmitt & Co.*,

9

170 F.2d 617, 620 (2d Cir. 1948)("There are only two occasions under the rules when the clerk may enter final judgment without action of the judge or jury; one in certain kinds of defaults involving liquidating sums, under rule 55(b)(1), and the other upon notice of acceptance of an offer of judgment under rule 68").

Under these cases, Rule 68 allows (indeed requires) the *clerk* to enter judgment as a ministerial act upon the filing of a Rule 68 offer and acceptance.[2]  This is significant.  There is no suggestion that an express determination of a reasonable royalty in accordance with the law applicable to 35 U.S.C. § 284 could be made through the ministerial act of the clerk of court.  The case law expressly prohibits the exercise by the court of any discretion to modify the terms of a Rule 68 offer; therefore, by definition, this court could not have made any express determination of a reasonable royalty in accordance with the law applicable to 35 U.S.C. § 284.

PGT contends that Thomson's construction of the agreement is incorrect because Thomson did not insist on the literal inclusion of a "trial" or "fact-finding process" in the agreement.  But the point of contract interpretation is to glean the parties' intent from the words that they used.  Thomson says that the trial or fact-finding requirement was material and was included in the agreement–at least insofar as the determination of any royalty rate was concerned.  This is why the Litigation Royalty provision refers to a reasonable royalty *expressly determined in accordance with the law applicable to 35 U.S.C. § 284*.  The need for an express determination in accordance with the law applicable to 35 U.S.C. § 284 incorporates at least the requirements of the statute, including a finding by a judge or a jury based on the *Georgia Pacific* factors.  Any other construction would re-write the

---

[2]      The Fifth Circuit noted that there are two exceptions to the mandatory nature of Rule 68: class action cases and injunction requests.  *See Ramming*, 390 F.3d at 371.  Neither exception is implicated in this case.

provision to define "Litigation Royalty" as a "royalty determined in the Lawsuit" and would render superfluous the more explicit definition agreed to by the parties.

PGT argues in its response to Thomson's motion for summary judgment that Thomson "ignores the fact the remaining defendants had the same interest as Thomson, obtaining as low a reasonable royalty as possible." (PGT's Response to Thomson's MSJ, at 29 n. 36). PGT also argues that Thomson's construction overlooks the very real possibility that the parties to a trial might have stipulated to a royalty. PGT therefore suggests that had it gone to trial with Mitsubishi and stipulated to a reasonable royalty or damages figure, then that stipulation would have been a sufficient foundation for the jury or the court to award a reasonable royalty against Mitsubishi based on the stipulation. Thus, PGT asserts that Thomson took a risk that it would be subject to the procedural decisions of the parties remaining in the lawsuit when it settled the case and agreed to the contingency payment provision. The court has considered carefully these arguments but ultimately rejects them.

First, while it is true that the remaining defendants in the lawsuit would have had an interest in obtaining as low a reasonable *royalty* as possible if the case had gone to trial, the statement is more correctly that the remaining defendants in the lawsuit had an interest in obtaining as low a reasonable royalty *rate* as possible. Application of the *Georgia Pacific* factors yields a rate that is applied against a royalty base. In this case, the royalty base would include the total number of infringing television sets manufactured or sold in the United States during the term of the '964 Patent. Any defendant who remained in the lawsuit would have had some interest in obtaining as low a reasonable royalty *rate* as possible, because the amount of the rate would have corresponded directly to the total amount of damages that could have been awarded against that defendant.

11

The same cannot necessarily be said for a defendant like Mitsubishi in the context of an offer of judgment.  Such a party would have a general interest in negotiating a total *payment* that is as low as possible (while being acceptable to the plaintiff), but it does not necessarily have any interest in the manner by which the total payment is calculated.  Rates agreed to which resolve litigation take into account other variables, including future legal expenses.  Indeed, under these circumstances, it is not clear whether the PGT/Mitsubishi royalty rate would enjoy *any* probative significance on the question of an established royalty in future litigation involving the patentee.  *See Rude v. Wescott*, 130 U.S. 153, 165 (1889).  The reference in the agreement to the *lowest* per unit reasonable royalty, if any, *as expressly determined in the Lawsuit in accordance with the law applicable to 35 U.S.C. § 284* is designed to ensure that Thomson's contingency payment is calculated at the lowest per unit reasonable royalty as expressly determined in accordance with the law applicable to 35 U.S.C. § 284, not a rate agreed to by the parties.

As to PGT's argument that it and Mitsubishi might have stipulated to a rate in trial, the effect of such stipulation is apparent when considered in the context of a judgment *against Mitsubishi*, but it is not so evident in the context of the contingency payment provision of the agreement.  Although PGT correctly notes that Thomson has no standing to complain about the factual sufficiency supporting any judgment or order against Mitsubishi, Thomson does have standing to question whether the provisions of its agreement with PGT are satisfied before it makes any additional contingency payment.  Notwithstanding PGT's arguments to the contrary, the court is persuaded that there was no Litigation Royalty expressly determined in accordance with the law applicable to 35 U.S.C. § 284, and PGT's right to the contingency payment has not been established.

Thomson also contends that any judgment obtained through the Rule 68 procedure is

necessarily a "settlement" and therefore PGT and Mitsubishi "settled" the case between them. *Fletcher v. City of Fort Wayne, Indiana*, 162 F.3d 975, 976-77 (7th Cir. 1998).  Independently of its argument concerning the construction of the Litigation Royalty provision of the agreement, Thomson contends that such a settlement absolves Thomson of any duty to pay the contingency payment.  PGT points to decisions permitting appeals from accepted offers of judgment and argues that if a party can appeal from a Rule 68 judgment, then such a judgment is not necessarily a "settlement"–at least within the meaning of the term as it was used in the agreement between Thomson and PGT.  *See*, *e.g.*, *Dugas v. Trans Union Corp.*, 99 F.3d 724 (5th Cir. 1996).

In a different context, the Supreme Court stated that "Rule 68 provides that if a timely pretrial *offer of settlement* is not accepted and 'the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.'  The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5 (1985) (emphasis added).  By this language, the Supreme Court characterized the Rule 68 procedure as one which exists to facilitate the settlement of litigation.

Despite the language in *Marek*, the Fifth Circuit recently noted that "[a] party *must* reserve its right to appeal pre-judgment rulings in the offer of judgment, otherwise no appeals from judgment will be allowed." *Ramming*, 390 F.3d at 370 (emphasis in original).  This language suggests that a party may reserve a right to appeal from a Rule 68 judgment.  According to PGT, the ability to appeal from a Rule 68 judgment counsels against a finding that all such judgments are settlements in the context of the Thomson agreement.

Neither the Supreme Court's general statements in *Marek* nor the Fifth Circuit's more recent discussion in *Ramming* answers definitively the question presented in this case:  whether a judgment

reserving a right to appeal nevertheless *always* constitutes a "settlement" such that the PGT and Mitsubishi "settled" within the meaning of Section 3 of the Thomson agreement. But considering the language of the agreement as a whole, however, it is enough to resolve this case that the terms of the parties' contract required an express determination of a royalty in accordance with the law applicable to 35 U.S.C. § 284. That statute assigns the responsibility for making that determination to a judge or a jury. Here, it was the terms of a Rule 68 offer of judgment, rather than a court finding or jury verdict, which fixed the amount of money payable as royalties. The Rule 68 procedure used in this case, like more conventional settlement agreements, relied exclusively on the parties, rather than a finder of fact, to determine the amount of royalties to be paid. That procedure is in too much tension with the language of the contract, which expressly incorporates the statutory and case law requirements, to accommodate PGT's proposed construction of the contingency payment provisions.

Finally, Thomson points to various statements made by Mr. Les Ware in connection with the negotiations which culminated in the agreement with Thomson. The parties dispute whether the court may consider all or part of the negotiations leading up to the contract. PGT relies heavily on the parol evidence rule, which provides that prior negotiations of parties to an integrated written contract are merged in the writing. In the absence of evidence to show fraud, accident or mistake in the omission of those terms from the written contract, evidence of prior negotiations is not admissible if its effect is to vary, add to, or contradict the terms of the written contract. *Paxton v. Spencer*, 503 S.W.2d 637, 642-643 (Tex. App.–Corpus Christi 1973, no writ). Thomson, for its part, argues that the parol evidence rule notwithstanding, a court may examine the circumstances surrounding the execution of the contract to aid it in understanding the object and purpose of the contractual language the parties chose. *Garcia v. King*, 164 S.W.2d 509, 512 (Tex. 1942). If, in the

14

light of the surrounding circumstances, the language of a contract appears to be capable of only a single meaning, the court can then confine itself to the writing. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).

In this case, Thomson seeks to prove that PGT was represented in the negotiations by Mr. Les Ware (one of PGT's attorneys). According to Thomson, the up-front payment initially requested by Mr. Ware from Thomson was $3 million. Although the entirety of the pre-agreement negotiations are not pertinent to this case, Thomson contends that Mr. Ware requested Thomson to increase its up-front payment from $3 million to $4 million. In response to Mr. Ware's demand, the Thomson representatives asked Mr. Ware what benefit Thomson would receive by increasing its up-front payment. Thomson says that Mr. Ware responded "$4 million buys you a trial."

Thomson argues that its construction of the Litigation Royalty provision of the agreement is consistent with the statements of Mr. Ware because the purpose of Thomson raising its initial payment from $3 million to $ 4 million was to ensure that the amount of any contingency payment would *not* be some amount agreed to by the parties, but rather would be an amount determined in a trial or other evidentiary fact finding process. Thomson thus points to Mr. Ware's statement that "$4 million buys you a trial" as support for its construction of the term "Litigation Royalty." Thomson also points out that Mr. Ware has never denied making the statement, although he has stated that he has no recollection of making the statement. According to Thomson, Mr. Ware's statement is admissible not to contradict or vary the meaning of Litigation Royalty, but to confirm that Thomson's construction of the term is correct.

The court need not consider Mr. Ware's statement to construe the pertinent provision of the agreement at issue. The definition of Litigation Royalty requires an express determination using the

15

law applicable to 35 U.S.C. § 284, including the *Georgia Pacific* factors.   A judgment entered

pursuant to Rule 68 does not.   The court has carefully considered the arguments of the parties in

support of their positions.   Ultimately, the court is persuaded that Thomson's construction of the

agreement is the correct one.   The court therefore grants Thomson's motion for summary judgment

and denies PGT's motion for summary judgment.   The court grants any pending motion to exceed

the page limitations, as the court has considered all of the parties' briefs in connection with its

decision.   Any other pending motions are denied as moot.   A final judgment is rendered

contemporaneously herewith.

SIGNED this 20th day of January, 2005.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

16